RITA DONAHUE, complainant-respondent,

*v.*

WILLIS JAMES DONAHUE, defendant-appellant.

[Argued May 24th, 1948.  Decided September 3d, 1948.]

*Mr. Charles M. Grosman,* for the defendant-appellant.

*Mr. George R. Sommer,* for the complainant-respondent.

The opinion of the court was delivered by

SCHETTINO, J.

This is an appeal from the denial by Chancery of an application for an order respecting the religious training of two infants.

The controversy arose in a matrimonial action between the parents of the children. The mother filed a bill for separate maintenance. The father counter-claimed for divorce on the ground of adultery and prevailed. Both sought custody of the children. Custody was awarded to the mother with the right of visitation by the father, the father also to have "the exclusive custody of said children in the month of July each year," subject to visitation by the mother during that month. At the final hearing it appeared that the children were not then receiving formal religious training. Of this, the father complained. Thereupon the mother enrolled the children for training in the Jewish faith. This precipitated the application here under review.

The father was born and reared a Catholic; the mother, a Jewess. Their marriage was the second for each of them, their respective prior marriages having been terminated by divorce. They were married in a Lutheran Zion Church. At some point the father embraced Christian Science. Two children were born of their marriage; a boy, now ten years of age, and a girl, now five and one-half years of age. The boy was enrolled in a Christian Science Sunday School at the age of three and apparently attended on some 12 occasions during the ensuing six years. The girl was baptized a Catholic at the instance of the father without the knowledge or consent of the mother and while the father and the mother were living apart. At the time of the hearing and for some time prior thereto, the children were living with the mother and her father, who is described as a devout adherent of the Jewish faith.

In this haphazard religious setting, Chancery was asked to order that the boy be reared in Christian Science and the girl in Catholicism, or at least that they be reared in some Christian faith. Advisory Master Francis declined to interfere with the religious training of the children. We think he properly so ruled.

Appellant contends that the right to control religious training is vested exclusively in the father. In support of this proposition, reliance is placed upon some early English cases. The early English rule appears to have been that, except under special circumstances, the child must be brought up in the father's religion. *In re Flynn (Court of Chancery, 1917), 87 N. J. Eq. 413, 418; Friedman, "The Parental Right to Control the Religious Education of a Child," 29 Harvard Law Review 485 (1916).* However, England by statute has abolished the superior right of the father. *Guardianship of Infants Act, 1925 (15 & 16 Geo. 5, c. 45). Vol. IX, The Complete Statutes of England 820 (Butterworth & Co., 1929); In re J. M. Carroll [1931], 1 K. B. 317, 337, 355 (C. A.); 36 Columbia Law Review 678, 679 (1936).* See, also, *49 Harvard Law Review 831, 832 (1936).* In our country, the rights of both parents are generally held to be equal, *36 Columbia Law Review 678 (1936);* and this view is settled in New Jersey by *R. S. 9:2–4,* which provides in part as follows:

"In making an order or decree relative to the custody of the children pending a controversy between their parents, or in regard to their final possession, the rights of both parents, in the absence of misconduct, shall be held to be equal, and they shall be equally charged with their care, nurture, education and welfare, and the happiness and welfare of the children shall determine the custody or possession."

As we have stated, custody was awarded to the mother. The mother, in the exercise of her equal right, has determined to rear the children in accordance with her faith.

We find nothing in the record to justify judicial interference with her decision. Under what circumstances, if any, a court would be justified in intervening with respect to the religious training selected by a parent having custody need not here be considered. No end of difficulties would

arise if judges sought to proscribe the selection of a religious faith made by a parent having custody. See *People, ex rel. Sisson* v. *Sisson, 271 N. Y. 285, 287, 288; 2 N. E. Rep. (2d) 660, 661 (1936)*. Intervention in matters of religion is a perilous adventure upon which the judiciary should be loathe to embark.

The order of the Court of Chancery is affirmed, with costs.

*For affirmance*—THE CHIEF-JUSTICE, BODINE, DONGES, HEHER, COLIE, WACHENFELD, EASTWOOD, BURLING, JACOBS, WELLS, DILL, FREUND, McLEAN, SCHETTINO, JJ. 14.

*For reversal*—None.