EGGLESTON, et al. *v.* LANDRUM, et ux.

Division A. Feb. 5, 1951.

No. 37809 (50 So. (2d) 364)

L. O. Smith, Jr., and W. Calvin Wells, Jr., for appellants.

**V. J. Stricker, Jr.,** for appellees.

648

**Lee, J.**

Charles McGuire Eggleston and wife, Jessie May Broadway Eggleston, filed their petition in the Chancery Court of Hinds County, pursuant to Section 1269, Code of 1942, for the adoption of James Frederick Landrum, a minor, of the age of four years. Mrs. Gale Broadway Landrum, the mother of the minor, joined in the petition. Process was served on James Frederick Landrum, Sr., the father of the minor. In his answer, he denied that such adoption would be for the best interest of the child, and prayed for the custody for himself. However, on the trial, through counsel, he withdrew his opposition. Whereupon Mr. and Mrs. James C. Landrum, the paternal grandparents, filed their motion to intervene for the purpose of showing the unfitness of the petitioners to be the adopted parents of the child. The grounds stated were: (1) Petitioners were members of the Christian Science Church and would not provide medical care for the child; and (2) one of the petitioners, Charles M. Eggleston, was a habitual user of intoxicating liquors. The court authorized them to file a formal objection, and permitted them to participate in the proceedings.

After hearing the cause, the court found that the petitioners "are fit, suitable and proper persons to be the adopted parents of said minor, except that they are believers in the doctrine and teachings of the Church of Christ Scientists, and the court finds that by reason of their belief in such faith, and solely for that reason, they are not proper persons to be the adopted parents of said minor, and that, therefore, the petition should be denied."

From the decree entered, the Egglestons have appealed here.

Appellants complain (A) that the refusal of the court to grant the adoption was a deprivation of their rights and privileges under the First and Fourteenth Amendments to the Constitution of the United States, and Section 18, Article 3 of the Mississippi Constitution; and (B) that the decree is against the great weight of the evidence. On the other hand, to sustain the decree of the lower court, appellees contend, in effect, that: (1) Under the doctrine of *parens patriae,* the State has the sovereign power of guardianship over persons under disability, and it alone has the right and power to determine the recipient of the privilege to adopt one of its wards; (2) there is no absolute right of adoption, but it is the mere extension of a privilege; (3) it is against public policy to permit persons who are opposed to medical treatment on account of religious beliefs to adopt a ward of the State; (4) the findings of the chancery court are conclusive; and (5) no constitutional rights of appellants have been invaded.

Keeping in mind the several contentions, pro and con, the decision of the case must turn on the question of the extent, if any, to which the religious creed of adoptive parents may warrant the State in withholding the privilege of adoption. The answer to the immediate question necessitates a consideration of the facts.

The father and mother of the child were married on July 30, 1944. They separated August 5, 1945, three days before his birth. On January 28, 1946, a decree of divorce was awarded Mrs. Landrum, together with the permanent custody of the child, and a judgment against the father for $30 a month for the child's support. Either from unwillingness or inability, the father made no payments. It was necessary for Mrs. Landrum to work. On that account, she experienced great difficulty in procuring a suitable person to take care of her child while thus employed. In this situation, she let

the child visit the petitioners. Mrs. Eggleston is a sister. She and her husband have been married fifteen years, but have no children. They live in Memphis, Tennessee, own a home in a desirable residential section, and other property. Mr. Eggleston is regularly employed at a substantial salary, and has additional income from rents. The record indicates that they are substantial people of high character. The child has been with them most of the time since June 1948. They have already started an educational fund for him. They have formed a strong love and deep affection for the child, and wish to adopt him and bestow upon him all rights which he would have as their own son.

The Egglestons are not members of, but they attend, the First Church of Christ Scientist in the city. However, since the child has been in their custody, they have procured medical care for his circumcision, smallpox vaccination, and shots or preventives against diphtheria, whooping cough, and typhoid fever. When he had measles, Mrs. Eggleston contacted her sister-in-law, a registered nurse, who advised that, since the disease was broken out, it would not be necessary to call a doctor. The Egglestons affirmed that they had provided medical care and attention whenever it was necessary, and that they would continue to do so in the future.

There can be no doubt ▮▮ under the doctrine of *parens patriae,* that the State has the sovereign power of guardianship over persons under disability, and it alone has the right and power to determine the recipient of the privilege to adopt one of its wards. ▮▮ To insure the best interest of a child, the power of the State transcends the rights of natural parents; and if they are unfit to have the custody, their children may be taken from them. 39 Am. Jur., Parent and Child, Section 15, p. 602.

▮▮ Likewise, there is no absolute right of adoption. It is the extension of a privilege. ''The right of adoption . . . was unknown to the common law of

England, and exists in this country . . . only by virtue of statute.'' 1 Am. Jur., Adoption of Children, Section 3, p. 622. Where the statutes provide for adoption, there is unanimous agreement that the welfare of the child is the primary consideration. 1 Am. Jur., Adoption of Children, Section 4, p. 623. Our statute, Section 1269, Code of 1942, extends the privilege, prescribes the requisite conditions under which adoption may be granted, and provides the method for its attainment.

It is not necessary, in the decision of this case, to declare that our public policy forbids the adoption of a ward of this State by one, who, on account of religious beliefs, is opposed to medical treatment. However, necessary surgical and medical care falls into the same category as necessary subsistence; and a child, who is not supplied with such care, becomes ''neglected'' within the meaning of our law; and penalties may be imposed against parents who omit the performance of their duty in such respect. See par. (h), Sec. 2, and Secs. 12 and 13, Chap. 207, Laws of 1946; Miss. 1942 Code Supplement, Section 7185-02(h), 7185-12, 7185-13.

Now Christian Science is said to be ''A system of healing disease of mind and body, which teaches that all cause and effect is mental, and that sin, sickness and death would be destroyed by a full understanding of the divine principle of Jesus' teaching and healing; a form of mental therapeutics.'' Webster's New International Dictionary, 2nd Ed.; 14 C. J. S., Christian, page 1115.

Medicine has made great strides since the days of Hippocrates. When we consider, in these modern times, the remarkable successes from the wonder drugs and the marvelous feats of surgery, it is almost unbelievable that a rational human being can become so fanatical in his adherence to creed that he would deny to himself these great means and agencies of relief and repair, especially if he is suffering with some substantial malady. Of course, if he is an adult, and in his right mind, society

might perhaps let him go on to his death, if he so chooses. ■■■ But an enlightened society will not permit the great healing medium of modern medicine and surgery to be denied to children, regardless of the conscientious belief of their parents, whether such parents be natural or adoptive.

■■■ Appellants are not members of the Christian Science church, though they are students of that creed. There was no proof that they are opposed to medical treatment. It is not safe to brand the member of a religious sect as a believer in all of the dogma of his sect. Oftentimes, members accept creeds with reservations, and do not profess to be orthodox in all of the tenets. These appellants maintained that they had provided all necessary medical and surgical care for this child ever since he had been in their custody. Besides, they solemnly declared to the court, under oath, that they have no objection or conscientious scruples against having a physician or surgeon, or both, attend the child, if such services are necessary; and that they will provide medical care and attention when and if the same becomes necessary. While the boy attends the Sunday School of that faith, even though he may desire to embrace that form of religion, according to the proof, he may not do so until he is twenty years old.

But, it is said, since a person, desiring to adopt a ward of the state, has no absolute right in such subject matter, the court or the chancellor in vacation acts not under a mandatory duty, but in the exercise of discretion, and that his findings and conclusions are, therefore, final. Section 1269, Code of 1942, provides in part: ". . . In either case the court, or chancellor in vacation, shall hear the evidence and if satisfied that the allegations of the petition are true, and that the interest and welfare of the person sought to be adopted will be promoted by the adoption, may decree that such person be adopted by the petitioner . . .".

However, the chancellor found that the appellants are fit, suitable, and proper persons to adopt the child, except that they are Christian Scientists in belief. If they had not been believers in that creed, it is clear that the chancellor would have granted the adoption. Since the fitness and suitability of the Egglestons are established, manifestly the adoption by them was, under the circumstances, for the best interest of the child. Whatever may be their religious views, the child has incurred no ill effects on that account. On the contrary, he has been the recipient of all necessary medical attention, as well as tender and loving care, in a good home and environment. Consequently, this is not a case of reversing a chancellor on his finding of fact, where the evidence is in dispute. It is a case without dispute as to the facts, in which the chancellor withheld from the appellants the privilege of adopting this little boy on the idea that the religious beliefs of the appellants would not be for the best interest of the boy. On this appeal, in review, we sit as chancellors; and we are of the opinion that the appellants were entitled to the privilege of adopting this child, and that the prayer for adoption, with all of the proffered benefits, should have been granted.

From what has been said, it is unnecessary, in the disposition of this cause, to pass on the constitutional questions invoked by the appellants.

The decree of the lower court is reversed, and a decree will be entered here in accordance with the prayer of the petition.

Reversed and decree here.