BRUNT, et ux. *v.* WATKINS, et ux.

No. 40622 April 7, 1958 101 So. 2d 852

308

*Lee B. Agnew, Barnett, Jones & Montgomery,* Jackson, for appellant.

No attorney listed for appellees.

GILLESPIE, J.

Appellants filed a petition to adopt a female child about two years old and named as defendants the natural parents of the child. At the first hearing, the chancellor found that the natural parents had not abandoned the child and ordered it taken from the custody of appellants, who had had the child in Mrs. Brunt's nursery since it was six weeks old, and granted custody to the natural parents. The case was then continued for six months.

After hearing additional evidence on the second hearing, the court found that both natural parents were unfit and unsuitable persons to have the care and custody of said child and that they were both mentally, morally, and otherwise unfit to rear and train it, and had forfeited their rights as parents. The child was placed in the custody of the Mississippi Children's Home until further order of the court. This decree stayed appellant's adoptive petition for thirty days and ordered an investigation and report by the Hinds County Department of Public Welfare. About ten days after this decree, custody of the child was changed to the Hinds County Department of Public Welfare. After the report of the investigation made by the Hinds County Department of Public Welfare was received and filed, the chancellor notified appellants' attorneys that after a study of the report it was his opinion that it was not to the best interest of the child that the adoption proceed, and advised appellants' attorneys of the right to further hearing.

After a third lengthy hearing, at which neither of the natural parents appeared, the chancellor entered a decree reciting that he had heard and considered all the testimony offered in open court in the three hearings and that in his opinion it would not be to the best interest of the child to adopt her to appellants. The chancellor's written opinion stated that he considered the report of the Hinds County Department of Public Welfare along with all the evidence in reaching his conclusions.

It should be observed that there was no appeal by the natural parents from the decree adjudging that they had forfeited their rights to rear and train the child, and no issues are involved in this appeal except those raised by appellants who sought to adopt the child.

■■ ■ The first assignment of error is that the overwhelming weight of the evidence establishes that certain statements in the report of the Hinds County Department of Public Welfare, which were unfavorable to appellants as prospective adoptive parents, were untrue, and that the chancellor was manifestly wrong in considering the report. This contention is based on the following circumstances: The investigator for the Welfare Department was called by appellants as an adverse witness, and while the court did not require the investigator to reveal the names of two references whom the investigator had interviewed, their identities were established indirectly. These two references were called as witnesses for the appellants and denied that they had made some of the statements attributed to them in the investigator's report and which were unfavorable to appellants. The first assignment of error is untenable for several reasons: (1) The chancellor may have believed that the investigator correctly reported the interviews; (2) the chancellor could have believed that the investigator's report in part was incorrect and still properly considered the other parts of the report as to which there was no impeaching testimony; and (3) the report of the investigator for the

Welfare Department was a part of the mass of evidence considered by the chancellor and he doubtless considered it and all its parts and gave such weight to it as the evidence showed it was worth.

The second assignment of error is that since the report of the Welfare Department consisted of a statement by a welfare worker of conversations and correspondence with others, it was hearsay and inadmissible as evidence. This assignment will be considered along with the fourth assignment of error, which is that consideration by the chancellor of the report of the Welfare Department over the objection of appellants constituted a denial of due process under the Constitutions of the State of Mississippi and the United States.

There is no doubt that the report of the Welfare Department was hearsay. Apart from the question of due process, the legislature has the power to establish rules of procedure and evidence, except that in criminal prosecutions, Article 3, Section 26, of the Constitution of Mississippi guarantees to the accused the right to be confronted by the witnesses against him.

In 1955, the legislature rewrote the adoption statutes. Laws of 1955, Ex. Ch. 34, Mississippi Code of 1942, Vol. 2, Recompiled, Sections 1269-02 to 1269-13. This legislation was enacted after years of study by various groups interested in modernizing the adoption laws. Among the innovations included in the new adoption statute is Section 1269-05, which, in part, is as follows:

"At any time after the filing of the petition for adoption and completion of process thereon, and prior to the entering of a final decree, the court may, in its discretion, of its own motion, or on motion of any party to said proceeding require an investigation and report to the court be made by any person, officer, or home as the court may designate and direct concerning the child, giving the material facts upon which the court may determine whether the child is a proper subject for adoption,

whether the petitioners or petitioner are suitable parents for the child, whether the adoption is to its best interest, and any other facts or circumstances which may be material to the proposed adoption. The court when such investigation and report may be required by it shall stay the proceedings in said cause for such reasonable time as may be necessary or required in the opinion of the court for the completion of such investigation and report by the person, officer, or home designated and authorized to make the same. . . . .''

■■ Prior to the enactment of the new adoption statutes the usual procedure in adopting a child was for the proposed adoptive parents to present their petition along with a few friends of the petitioners to testify that the latter would make good parents, etc. Such proceedings were usually exparte and as it worked out in practice, the adoptive parents were in control of the production of the evidence on which the chancellor acted. It is universally recognized that adoption laws have as their primary purpose the promotion of the welfare of the child rather than the gratification of the desire of the adoptive parents to enjoy the privileges of parenthood. The new law authorizes the chancellor, in his discretion, to cause some suitable person or organization to make an investigation and report to him facts bearing on the suitability of the petitioners as parents of the child, and whether the adoption would be for the best interest of the child. This procedure, when fairly and properly administered, is calculated to bring to the attention of the chancellor facts bearing on the welfare of the child that would likely not be discovered or brought to his attention under the old procedure. Moreover, the statute authorizes the chancellor to make use of the services of trained welfare workers as investigators whose special training enables them to know what facts and circumstances bear upon the welfare of the child.

■■ In considering the contention that the admission of the report of the Welfare Department over the

objection of appellants constituted a denial of due process, it should be observed that the investigation and report is limited to matters concerning (1) whether the child is a proper subject for adoption, (2) whether the petitioners are suitable parents for the child, (3) whether the adoption is to the best interest of the child, and (4) any other facts or circumstances which may be material to the proposed adoption. No authority is given the chancellor to order an investigation in child custody cases or when the issue is whether natural parents have forfeited their right to rear a child, and since this appeal does not involve any such issue, but only the adoption, the cases cited by appellants involving such cases are not applicable.

It has been held in many jurisdictions that consideration by the court of an investigative report of a welfare agency or the like in child custody cases, and in cases where the rights of natural parents are sought to be forfeited, constitutes a denial of due process; that such procedure it at variance with the fundamental principle that the decision of a court must be based on evidence adduced in open court where the person whose testimony is reported is under oath and subject to cross examination. See Anno., 35 A. L. R. 2d 629. But we are not confronted with a child custody case and no rights of natural parents are involved on this appeal, those rights having been adjudicated by the trial court and no appeal was prosecuted by the natural parents.

 █ Petitioners seeking the adoption of a child do not stand before the law in the same relation as natural parents; the protection of the guaranty of due process of law afforded the latter relates to fundamental and fixed rights, while such rights as the former have amounts to an expectation of the extension of a privilege. Adoption was not known to the common law; it is a creature of statute; and no person is entitled to adopt another as of right. Eggleston v. Landrum, 210

Miss. 645, 50 So. 2d 364. ▆▆▆ So long as the procedure for adoption affects all persons alike who are similarly situated and is suitable to accomplish the paramount purpose for which adoption laws are enacted—the promotion of the welfare of children—and is not unjust, unreasonable or arbitrary, it will be adjudged due process. Because of the considerable power the State has over children, based on its position as parens patriae, the wisdom and judgment of the legislature in providing for procedure in adoption cases should not be questioned unless manifestly unreasonable or clearly unconstitutional. ▆▆▆ We cannot say that the granting of authority to make investigations in adoption cases is unreasonable, or that such procedure constitutes a denial of due process of law.

▆▆ ▆ In appellants' fourth assignment of error it is contended that we should reverse the decree denying the adoption for the reason that the chancellor was manifestly wrong in finding that it was not to the best interest of the child for the adoption to proceed.

The proof shows that appellants are faithful members of their church, and are upright, sober and industrious. They are good citizens and would be an asset to any community. But the chancellor heard all the testimony, observed the witnesses, and carefully weighed all the matters to be considered in determining whether the adoption would be to the best interest of the child. In addition to the intangible aspects that inhere in such a proceeding, the chancellor gave the following specific reasons why he reached the conclusion that it was not to the best interest of the child for the adoption to proceed: (1) Mr. Brunt was 53 years old in October 1956, and Mrs. Brunt was 51 in January 1957. The child they sought to adopt was three years old in October 1956. Mr. Brunt will be 68 years of age when the child becomes of college age. The experts in child welfare are of the opinion that usually it is not to the best interest of a child to be adopted to persons over the age of 40, and

that age bears on the ability of the adoptive parents to supply the material needs of the child, and from the standpoint of the fact that as people grow older their mental attitudes become more fixed and inflexible. (2) The natural mother of the child feels that Mrs. Brunt has dealt very unfairly with her and resents Mrs. Brunt's efforts to adopt the child. The evidence showed that complete severance of the ties between the child and the natural parents in cases of this kind is very desirable in order to avoid consequences that would be detrimental to the future welfare of the child.

It is indicated by the evidence that there are other prospective adoptive parents who are younger and who would otherwise be suitable parents and who desire to adopt a child.

The chancellor had a superior opportunity to determine what was for the best interest of this child. We are unable to say that his decision was incorrect.

Affirmed.

*Roberds, P. J.,* and *Hall, Kyle* and *Holmes, JJ.,* concur.

HALL, J., specially concurring:

As an original proposition, if I had been passing on this case as chancellor, I would have granted a decree adopting the child to Mr. and Mrs. Brunt, but from all the evidence I am unable to say that the chancellor was manifestly wrong and therefore I concur in the affirmance of the decree appealed from.