112 N.J. Super. 326 (1970)
271 A.2d 27
IN THE MATTER OF THE ADOPTION OF "E".
Superior Court of New Jersey, Essex County Court, Probate Division.
Decided November 2, 1970.
*327 Mr. David M. Beckerman, for plaintiffs adoption applicants.
(Messrs. Beckerman, Franzblau, & Cohen, attorneys).
Mr. Edward Terner, as intervenor, for Children's Aid & Adoption Society.
CAMARATA, J.S.C.
The issue presented for determination is whether adopting parents who do not believe in the existence of a Supreme Being should be permitted to adopt a child 11 month of age.
Plaintiffs, husband and wife, in 1965 applied to the Bureau of Children's Services of the New Jersey Department of Institutions and Agencies seeking to adopt a child. They informed the Bureau that they had no religious affiliation and were not members of any organized church.
Because of plaintiffs' lack of religious affiliation, the Bureau would not consider them as eligible adoptive parents  the Bureau relying in part on its Children's Manual, volume 2, 5245-31, entitled "Religious."
At that time the Bureau required each applicant for adoption to designate their religious affiliation and made it mandatory that a religious reference be obtained from a religious leader of the sect to which they belonged.
In February 1966 plaintiffs instituted proceedings in the Appellate Division alleging that this requirement was illegal and in violation of the New Jersey and Federal Constitutions. By stipulation entered October 4, 1966 the suit was dismissed. Thereafter, the regulations of the Bureau of Children's Services were changed. The pertinent part now provides as follows:
5.23  Religion of applicants
Opportunity for religious or spiritual and ethical development of the child should receive full consideration in the selection of adoptive homes. Lack of religious affiliation or of a religious faith, however, should not be a bar to consideration of any applicants for adoption. (2.6, 4.7).
*328 Agencies under religious auspices are free to stipulate requirements consistent with their faith and practice, and that of their clients.
When prospective adoptive parents are identified with a religious faith group, a clergyman of their religious faith may be consulted in order to secure his evaluation of the religious factors.
Couples in which the husband and wife have different religious faiths should not be denied consideration for adoptive placement on this account alone. It is necessary to evaluate in each case what their religious faiths and particularly the difference in religious faith means to them, and how this difference may affect the rearing and development of a child. [Emphasis added]
On July 11, 1967 plaintiffs obtained a male child D, then one month old, from the Children's Aid and Adoption Society of New Jersey. The report of the Society to the court stated that plaintiffs were not religiously affiliated. However, the Society recommended the adoption, and it became final on September 10, 1968.
On June 27, 1969 plaintiffs received from the Children's Aid and Adoption Society another child, E, born on June 19, 1969. E and D are now residing with plaintiffs. The Society in its report to the court stated: "Plaintiffs have no church affiliation however the agency has found them to be people of high moral and ethical standards."
They recommended to the court her adoption.
At E's hearing on August 25, 1970, the court questioned plaintiffs as to their religious affiliations. They testified they had no belief in any religion and did not believe in the existence of a Supreme Being. The court must consider the physical and spiritual welfare of the child. 2 Am Jur.2d, Adoption § 64.
The Declaration of Independence refers to: "Nature's GOD * * * Creator * * * The Supreme Judge of the World * * * Divine Providence."
The founders of our country were most sympathetic to the fundamental belief in the existence of a God.
In Zorach v. Clauson, 343 U.S. 306, 313, 72 S.Ct. 679, 684, 96 L.Ed. 954, 962 (1952), Mr. Justice Douglas speaking *329 for the court said: "We are a religious people whose institutions presuppose a Supreme Being. We guarantee the freedom to worship as one chooses."
Supreme Being has been defined as "A Supreme Being is God."  Webster's 7th New Collegiate Dictionary.
God has been defined as "The Supreme Being is the eternal infinite spiritual creator and sovereign of the universe." 38 C.J.S. at 935. See also United States v. Seeger, 380 U.S. 163, 174-185, 85 S.Ct. 850, 858-863, 13 L.Ed.2d 733, 741-748 (1965).
After the hearing the court granted the request of the Children's Aid and Adoption Society to intervene in these proceedings.
Courts should be loath to intervene in matters of religion. Donahue v. Donahue, 142 N.J. Eq. 701 (E. & A. 1948). That case involved a matrimonial action where both parents sought the custody of two children born of the marriage. The father sought to have the children reared in a faith of his selection. See also T. v. H., 102 N.J. Super. 38 (Ch. Div. 1968), affd. on other factual grounds, 110 N.J. Super. 8 (App. Div. 1970). These cases are distinguishable from the instant one. In Donahue, the custody of natural-born children was involved, whereas here it is the placing of a child by adoption into the custody of plaintiffs.
N.J.S.A. 9:3-17 et seq., relating to adoptions, is silent as to any religious requirements of adopting parents. The only guidelines are those set forth in the Bureau of Children's Service requirements, 5.23, supra.
N.J. Const. (1947), Art. I, par. 5, provides:
No person shall be denied the enjoyment of any civil or military right, nor be discriminated against in the exercise of any civil or military right, nor be segregated in the militia or in the public schools, because of religious principles, race, color, ancestry or national origin." [Emphasis added]
Plaintiffs' right to adopt a child is subject to court approval as to whether the best interests of the child would *330 be promoted by permitting the adoption. There is no absolute right of adoption  it is a privilege. Brunt v. Watkins, 233 Miss. 307, 101 So.2d 852, 855-856 (Sup. Ct.) (1958); Eggleston v. Landrum, 210 Miss. 645, 50 So.2d 364, 23 A.L.R.2d 696 (Sup. Ct. 1951).
The welfare of the child is the paramount consideration in controlling the discretion of the court. In re Jacques, 48 N.J. Super. 523, 533 (Ch. Div. 1958). This paramount consideration supercedes any right the plaintiffs have in seeking the adoption.
N.J. Const. (1947), Art. I, par. 3, in part provides:
No person shall be deprived of the inestimable privilege of worshiping Almighty God in a manner agreeable to the dictates of his own conscience; nor under any pretense whatever be compelled to attend any place of worship contrary to his faith and judgment; nor shall any person be obligated to pay tithes, taxes, or other rates for buildings or repairing any church or churches, place or places of worship, or for the maintenance of any ministers, or ministry, contrary to what he believes to be right or has deliberately voluntarily engaged to perform. [Emphasis added]
N.J.S.A. 2A:4-2 states:
It is hereby declared to be a principle governing the law of this state that children under the jurisdiction of said court are wards of the state, subject to the discipline and entitled to the protection of the state, which may intervene to safeguard them from neglect or injury and to enforce the legal obligations due to them and from them." [Emphasis added]
E is the court's ward. The court is concerned with the dictates of the child's conscience. The court has the right and duty under either the cited statute or under the doctrine of parens patriae to carry out the constitutional privileges and rights afforded to E, namely, "the inestimable privilege of worshiping Almighty God in a manner agreeable to the dictates of his own conscience."
In Torcaso v. Watkins, 367 U.S. 488, 495, 81 S.Ct. 1680, 1683-1684, 6 L.Ed.2d 982, 987 (1961), Torcaso was appointed to the office of notary public; he was refused a *331 commission to serve because he would not declare his belief in God. The Declaration of Rights of the Maryland Constitution provided that "no religious test ought ever to be required as a qualification for any office of profit or trust in this state, other than a declaration of belief in the existence of God." [Emphasis added] The court held this provision unconstitutional in that it invaded Torcaso's freedom of belief and religion. The court stated that neither a state nor the federal Constitution can constitutionally force a person
To profess a belief or disbelief in any religion * * * [nor] impose requirements which aid all religions as against non-believers and neither can aid those religions based on a belief in the existence of God as against those religions founded on different beliefs. [at 495, 81 S.Ct. at 1683]
Torcaso was of age to make his own decision as to his belief or nonbelief in God.
In the present case E is of tender years. The decision of the child to form a belief or nonbelief in a Supreme Being must await the time when it has the maturity, understanding and independent volition to do so. In Jacques, supra, the court said
* * * It is the instinct of a child to attach itself and cling to those who perform toward it the parental office, and they become endeared to it by ministering to its dependence. [48 N.J. Super. at 533]
The child should have the freedom to worship as she sees fit and not be influenced by parents or exposed to the views of prospective parents who do not believe in a Supreme Being.
The court concludes that the best interests of E will not be promoted by granting the adoption. Accordingly, plaintiffs' application to grant the adoption of Eleanor is denied.
The child is to be returned to the Children's Aid and Adoption Society for further action by it. N.J.S.A. 9:3-27(D).